# EXHIBIT 8

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

UNITED STATES SECURITIES AND )
EXCHANGE COMMISSION, )
                                                         Plaintiff, )
                                                             )     2:11-cv-02011-GMN -VCF
v. )
                                                             )     **O R D E R**
RUETTIGER, *et al.*, )
                                                             )
                                        Defendants. )
                                                                  )

       Before the court is plaintiff the United States Securities and Exchange Commission's (hereinafter "Commission") Motion to Serve Defendants Dynkowski and Smanjak by Publication. (#30).

**Background**

       On December 16, 2011, the Commission filed its complaint against thirteen defendants alleging that they participated in a "pump and dump" scheme relating to the penny stock company, Rudy Nutrition. (#1). After plaintiff filed the complaint, eleven of the thirteen defendants consented to judgment. (#2 – #12). The court entered judgment against these defendants on January 19, 2012. (#14 – #24). Two defendants, Pawel P. Dynkowski and Chad P Smanjak, did not consent to judgment and have allegedly fled this country to avoid prosecution in related criminal proceedings. (#30). On July 13, 2012, plaintiff filed the instant motion asking this court to permit service upon the remaining defendants by publication in the *International Herald Tribune* under Federal Rule of Civil Procedure 4(f)(3). *Id.*

**Service By Publication**

       **A.**      **Relevant Facts Regarding Defendants**

In 2009 and 2010, defendants Dynkowski and Smanjak were indicted in separate courts for their

1 involvement in manipulative trading practices relating to penny stock companies. *Id.* Defendant
2 Dynkowski was also named as a defendant in a civil action in 2009, relating to the same fraudulent
3 conduct. *Id.* According to the declaration of U.S. Department of Homeland Security, Immigration and
4 Customs Enforcement (hereinafter "ICE") Special Agent, Brian Maher, defendant Dynkowski fled the
5 country in 2008. (#30 Exhibit 1). Dynkowski boarded an airplane on December 7, 2008, landed in
6 Poland, and has not returned to the United States. *Id.* A warrant for Dynkowski's arrest was put into
7 the National Crime Information Center, but he has not been apprehended. *Id.* Defendant Dynkowski
8 is thought to be living in Europe under a false identity. *Id.*

9 Defendant Smanjak fled the United States as well, and, according to ICE Special Agent, Jeffrey
10 Eastman, is believed to be living in South Africa. (#30 Exhibit 2). On April 25, 2010, defendant
11 Smanjak boarded an airplane for South Africa on a round trip ticket, but did not return to the United
12 States. *Id.* On January 11, 2012, defendant Smanjak was arrested by South African police and taken
13 into custody. *Id.* Defendant Smanjak posted bond and was released on bail. *Id.* ICE believes that he
14 remains in South Africa. *Id.*

**B.     Relevant Law**

16 Rule 4(f)(3) governs serving an individual in a foreign country, and states that "[u]nless federal
17 law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose
18 waiver has been filed—may be served at a place not within any judicial district of the United States:
19 by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).
20 The Ninth Circuit has held that alternative service methods under Rule 4(f)(3) are equally as valid and
21 effective as traditional methods, and in no way extraordinary or a "last resort." *See Rio Props., Inc. v.*
22 *Rio Intern. Interlink*, 284 F.3d 1007, 1015-16 (9th Cir. 2002) (stating that "[b]y all indications,
23 court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule
24 4(f)(2). Rule 4(f)(3) is not . . . in any way dominated by Rule 4(f)'s other subsections; it stands
25 independently, on equal footing. [N]o language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and

1 certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after
2 attempting service of process by other means.").

3       To uphold the notions of due process, the alternative method of service must be "reasonably
4 calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and
5 afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*,
6 339 U.S. 306, 314 (1950). "In the case of persons missing or unknown, employment of an indirect and
7 even a probably futile means of notification is all that the situation permits and creates no constitutional
8 bar to a final decree foreclosing their rights." *Id* at 317.

9     **C.**    **Discussion**

10       The Commission asks this court to permit service upon defendants Dynkowski and Smanjak
11 through a notice published in the *International Herald Tribune.* (#30). The Commission asserts that
12 there is no international agreement (*i.e.* the Hague Service Convention[1]) prohibiting service by
13 publication upon these defendants, and that the Ninth Circuit, as well as others, have "authorized service
14 through publication when defendants are living abroad and/or not able to be located."[2] *Id.* The
15 Commission argues that, as demonstrated by other courts, service by publication in the *International*
16 *Herald Tribune* is "reasonably calculated to provide notice to the defendants." *Id.* The newspaper is
17 "widely read by the international financial community in Europe," and is the Global Edition of the New
18 York Times, with a daily circulation of 240,000 people in 80 countries. *Id; See Tome*, 833 F.2d at 1091.

---

[1] The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents (20 U.S.T. 361) ("Hague Service Convention") does not apply here because (a) Dynkowski's whereabouts are unknown (see *U.S. ex rel Bunk v. Birkart Globistics GmbH & Co.*, No. 02-cv-1168 (AJT/TRJ), 2010 WL 423247, *4 (E.D. Va, Feb. 4, 2010)); and (b) South Africa, where Smanjak is believed to be residing, is not a signatory to the treaty. *See generally*, U.S. State Department website (http://travel.state.gov/law/judicial/judicial_680.html.). *See also Rio Props.*, 284 F.3d at 1015, n. 4 (Costa Rica is not a signatory of Hague Service Convention so the court is not precluded by international agreement).

[2] *See Rio Props.*, 284 F.3d at 1015-16; *SEC v. Tome*, 833 F.2d 1086, 1091 (2d Cir. 1987); *SEC v. Shehyn*, 2008 WL 6150322, at *4-5 (S.D.N.Y., November 26, 2008); *Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005); *Smith v. Islamic Emirate of Afghanistan*, No. 01-cv-10132, 2001 WL 1658211, at *3 (S.D.N.Y., Dec. 26, 2001); (service on Bin Laden effected by publication in the *International Herald Tribune*).

*See Rio Props.*, 284 F.3d at 1016 (citing *Tome*).

The Commission states that several factors indicate that defendants Dynkowski and Smanjak are "well aware of the pending litigation filed against them," including (1) the great amount of media attention given to this matter,[3] (2) the fact that the defendants frequent an electronic penny stock message[4] board that has covered this litigation, and (3) that the defendants fled the country abruptly and "under suspicious circumstances." (#30). The Commission argues that defendants Dynkowski and Smanjak's likely knowledge of this action "bolsters the effectiveness and fairness of the alternative means of service proposed" by the Commission. *Id; See Shehyn*, 2008 WL 6150322, *4 (stating that "[a]lso, considering [defendant's] apparent awareness of the pendency of this suit … will ensure [defendant] is afforded an opportunity to present his objections to the charges against him."); *SEC v. Anticevic*, 2009 WL 361739, *4 (stating that "[defendant]'s actual knowledge may increase the likelihood that published service will ultimately come to his attention, at minimum through his increased awareness of and attentiveness to any information about the lawsuit."). The Commission submitted to the court a proposed notice of the summons for publication in the *International Herald Tribune,* which provides information relating to the litigation and explains what actions need to be taken by the defendants. (#30).

The court finds that service by publication upon defendants Dynkowski and Smanjak as proposed by the Commission is appropriate. Based on the fact that defendants Dynkowski and Smanjak have fled the country in an attempt to evade criminal and civil charges, that they likely know of the pending litigation though other means, and that the *International Herald Tribune* is a widely read international publication*,* the court finds that publishing the proposed notice in this newspaper is

---

[3] *See e.g.*, Megan Johnson, *Remember Rudy? He's in trouble with the SEC*, The Boston Herald, Herald Blog (Dec. 17, 2011), http://www.bostonherald.com/blogs/ entertainment/ the_assistant/?p=7718; *William P. Barrett, SEC Sues Sport-Movie Subject for Pump and Dump Fraud*, Forbes.com (Dec. 16, 2011), http://www.forbes.com/sites/williampbarrett/2011/12/16/sec-sues-sport-movie-subject-for-pump-and-dump-fraud/.

[4] See http://investorshub.advfn.com/boards/read_msg.aspx?message_id=70032900.

"reasonably calculated, under all of the circumstances, to apprise [the defendants] of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314-17; *See also Shehyn*, 2008 WL 6150322, *4; *SEC*, 2009 WL 361739, *4. Service by publication upon these defendants is not prohibited by international agreement. (#30); 20 U.S.T. 361; Fed. R. Civ. P. 4(f)(3). No other means of service needs to be attempted prior to the court ordering service by publication on a foreign defendant. *Rio Props.,* 284 F.3d at 1015. The Commission is permitted to effect service under Fed. R. Civ. P. 4(f)(3) upon defendants Dynkowski and Smanjak by publication of the summons in the *International Herald Tribune*.

Accordingly, and for good cause shown,

IT IS ORDERED that plaintiff the United States Securities and Exchange Commission's Motion to Serve Defendants Dynkowski and Smanjak by Publication (#30) is GRANTED.

IT IS THEREFORE ORDERED that the summons in this action shall be served on defendants Dynkowski and Smanjak by publication in the *International Herald Tribune* for a period of four weeks and at least once a week during that time.

DATED this 23rd day of July, 2012.

**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**

5